UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

RONALD W.,[1]                                                      1:21-cv-1824-JR

Plaintiff,

OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits. For the reasons stated below, the Commissioner's decision is affirmed.

Plaintiff asserts disability beginning September 29, 2018,[2] due to neck injury, tingling and numb arms, frequent intense headaches, lack of sleep, lack of concentration, lack of neck mobility,

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.
[2] At the hearing before an ALJ, plaintiff changed his alleged onset date to October 1, 2019.  Tr. 16, 63.

high blood pressure, acid reflux, inability to lift more than a gallon of milk, anxiety, facial numbness, and carpal tunnel syndrome. Tr. 229, 240, 289. After a hearing held on January 12, 2021, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 39, 15-33. Plaintiff contends the ALJ erred by: (1) finding plaintiff could perform his past work; (2) rejecting plaintiff's symptom testimony; and (3) rejecting medical opinions.

A.    Past Relevant Work

In December 2017, plaintiff hit the back of his head, neck, and low back exiting his truck. Tr. 665. The subsequent injury worsened his preexisting cervical spondylosis. Tr. 665. Plaintiff reported he stopped working as an in-home health care provider on June 1, 2019, due to constant neck pain. Tr. 232, 235. When confronted at the hearing with records showing plaintiff earned at the substantial gainful activity (SGA) level in September 2019, he amended his alleged onset to October 2019. Tr. 62-63.

The record shows plaintiff worked as a home care attendant at the SGA level through the third quarter of 2019. Tr. 207 (earned $4,557 from DHS personal care services for his step-daughter Laney B. in the third quarter and only $971 in the fourth quarter); see https://www.ssa.gov/oact/cola/sga.html (2019 SGA is $1,220 per month).

Plaintiff explained during the hearing the assistance he provides for his stepdaughter:

> I help my wife. - mean I can't do anything physical, but if my wife needs to leave, somebody has to be with her. She's bedridden so you can't just leave her alone. She has a hire we -- she hires people to come in and help her and if there's a lapse, I fill in for just somebody to be here. I could call 911.
> ….
> So, in 20l7 -- I mean what I used to do before my disabilities, I would feed her, because she's got to be fed through a tube. You change her diapers. You got to pick her up, put her in a wheelchair. She's bedridden, so you pretty much do everything for her.

Tr. 59, 61.

After plaintiff's accident, plaintiff explained:

> I wasn't able to do any of the physical stuff. My wife had hired people to come in
> and help. I -- what I did was when nobody was here, my wife had to leave or
> whatever, I was here just to watch over her. If something happened, I could make
> a phone call. I couldn't pick her up, I couldn't put her in a wheelchair, I couldn't
> change her diaper, and I couldn't feed her.

Tr. 62.

Plaintiff further explained that after September 2019, when his earnings dropped off, he

and his wife had to hire other individuals to care for his stepdaughter because he could no longer

provide the necessary assistance. Tr. 63.

The ALJ consulted a vocational expert and determined that although home care attendant

work is classified as a medium level of exertion, as actually performed by plaintiff following his

accident, he performed at the sedentary level while still enabling him to earn income at the SGA

level.  Tr. 32.  The ALJ determined plaintiff could perform work at the light level with certain

other limitations including lifting only 20 pounds occasionally and 10 pounds frequently.  Tr. 22.

In concluding plaintiff could perform his past relevant work, the ALJ stated:

> The undersigned notes the claimant worked as a home care attendant for Laney [B.]
> from 2017 to 2019. Earnings records show that he earned $8,424 in the third quarter
> of 2018, $9,610 in the fourth quarter of 2018, $9,889 in the first quarter of 2019,
> $9,859 in the second quarter of 2019, and $4,122 in the third quarter of 2019 from
> his work for Laney [B.] (Exhibits 7D, 12D, and testimony). These earnings
> sufficiently establish the performance of this work activity at levels of substantial
> gainful activity. The record also shows that the claimant performed this job long
> enough to learn and adequately perform the duties of that job. Finally, this job was
> performed within 15 years of the Date of this Decision. Accordingly, this qualifies
> as past relevant work under SSR 82-62.

Tr. 32.

Plaintiff characterizes the record as demonstrating that once he became disabled, as of his

new onset date, he could not perform any work as a home health care provider.  However, the ALJ

identified past relevant work that plaintiff could perform that did not require  more than a sedentary

level of exertion.[3]  The record shows that despite his injuries in December 2017, plaintiff was able to adjust his work as a home health care provider and still earn at the SGA level.  Whether plaintiff could perform these activities when his condition allegedly worsened after September 2019, is an issue regarding plaintiff's creditability and not whether he has past relevant work as a home health care provider performed at the sedentary level.  The ALJ did not err in this regard.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (ALJ's findings are upheld if supported by inferences reasonably drawn from the record and even if evidence exists to support more than one rational interpretation).

B.    Subjective Symptom Testimony

Plaintiff described how his neck pain has progressively worsened since his December 2017 fall:

> It is intense pain that goes up my neck and it goes like up into my head and into my eyes, and my face -- the left side of my face goes numb. The left side of my neck goes numb. My left arm – well, both arms will go numb, but more so on the left side will go numb. And my fingers; I get tingling all the time.

Tr. 49.  Plaintiff asserts that he can sit for 30 minutes, stand for 30 minutes, walk about two hundred yards, and work for two hours at any job.  Tr. 55.

The ALJ determined that:

> The objective medical evidence does not support the extent of the claimant's alleged symptoms and resulting functional limitations. He first reported neck, upper back, and right lateral hip pain after a work-related slip and fall on December 12, 2017. He denied numbness, weakness, or tingling but occasionally had pain radiating into his arms with certain neck movements. It was noted that an MRI from 2012 showed multilevel degenerative changes resulting in multilevel foraminal narrowing and central canal stenosis. Musculoskeletal examination showed no swelling, discoloration, or bruising of the posterior neck or upper back. There was

---

[3] Plaintiff also asserts this work required him to lift his stepdaughter out of bed, lift up to 80 pounds, walk two hours, stand two hours, stoop for two hours, reach for two hours, kneel and crouch for two hours, and handle small objects for two hours during the workday.  Tr. 274.  However, the ALJ elicited testimony that after December 2017, plaintiff substantially curtailed his exertion level while still managing to work at the SGA level.

> tenderness along the cervical and upper thoracic spinous processes. Cervical spine range of motion showed that flexion and lateral bending were limited by pain. Strength was full throughout the extremities. He was assessed neck and back pain with a suspected contusion/strain. He was advised to treat with ibuprofen, as needed, and was told that he could seek chiropractic care, if he found it helpful in the past [Tr. 374, 376, 379].

Tr. 23-24.  The ALJ noted that although plaintiff reported ongoing neck pain, he continued to work through 2018.  Tr. 24, 25, 26.  The ALJ discussed plaintiff's ongoing treatment that occurred prior to the amended alleged onset date and stated, "[d]espite these complaints, the claimant continued to work at levels consistent with substantial gainful activity."  Tr. 26.  Indeed, as noted above, plaintiff continued to work at the SGA level until the fourth quarter of 2019.  The ALJ then noted and discussed the evidence which does not show any significant changes in plaintiff's complaints after the amended alleged onset date.  Tr. 26-27.  The ALJ specifically noted:

> Generally, the evidence shows consistent pain complaints both before and after the amended alleged disability onset date, as well as numbness and tingling in the face and in the hands.  However, he was not interested in pursuing treatment with pain medications, testifying that he had a history of addiction in his family. While he testified that he was unable to schedule carpal tunnel surgery because of the COVID-19 pandemic, his records show that he declined referrals to a hand surgeon in August 2019. It is not clear why he initially declined treatment of carpal tunnel. Regardless of complaints of pain and numbness in the hands, he did not wear wrist splints and reported that he did not drop things. While he testified that he could not grip or grasp items, this is not consistent with his initial refusals to treat carpal tunnel nor with his reports to treatment providers that he did not drop things. Moreover, his treatment records show that he reported that carpal tunnel symptoms had been present for twenty years, but he continued to work despite these symptoms.

Tr. 28.

Although plaintiff amended his onset date at the hearing, his reports show he claimed he stopped working prior to that amended date due to his debilitating neck pain despite engaging in SGA.  The ALJ noted that after his amended onset date, the medical record and complaints were similar.  Here, the ALJ found that plaintiff's statements to his treatment providers did not support

significant sitting, standing, and walking limitations as reported by plaintiff and that plaintiff's testimony was not consistent with the objective medical evidence. Tr. 28, 27 (citing e.g., Tr. 650-53, 655-59).  An ALJ may cite to inconsistencies in the medical record and subjective symptom testimony to discredit that testimony.  Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

In addition, while the ALJ cited plaintiff's work activity that was just prior to the amended alleged onset date, it was inconsistent with the subjective complaints of disability noted by plaintiff in his reports to the agency. When combined with the lack of any changes in complaints in the medical record at the time of the amended onset date and thereafter, the work activity provides a clear and convincing reason for discounting plaintiff's symptom testimony after the amended alleged onset date.  Plaintiff's activity caring for his stepdaughter was inconsistent with plaintiff's report that he stopped working as an in-home health care provider on June 1, 2019, due to severe pain.  See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (Even where activities suggest some difficulty functioning, those activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment).  The ALJ did not err in discrediting plaintiff's testimony.

C.     Medical Opinion

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Ruth Lowengart whom plaintiff hired to perform an independent medical exam after the hearing.  Dr. Lowengart diagnosed a number of issues including post-traumatic headache leading to debilitating headaches. Tr. 672.  Dr. Lowengart opined generally that plaintiff only retained the residual functional

capacity for a reduced range of sedentary work and would be absent from work about four days per month.  Tr. 672-73, 676-78.

Under the current regulations, the ALJ shall consider supportability, consistency, the relationship with the claimant, length of treatment relationship, frequency of examinations, examination relationship (i.e., in person versus record review), specialization, and other factors such as an understanding of disability policies and requirements in assessing medical opinion.  20 C.F.R. § 404.1520c(c).  The most important factors are supportability and consistency.  20 C.F.R. § 1404.1520c(b)(2).

The new regulations still require ALJs to articulate their reasoning, specifically addressing how they considered the consistency and supportability factors.  Titus L.S. v. Saul, 2021 WL 275927 (C.D. Cal. Jan. 26, 2021).  An ALJ must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence.  See Zhu v. Comm'r of Soc. Sec., 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the new 2017 regulations).

Plaintiff reported to Dr. Lowengart that he injured himself in December 2017, continued to work for about a year before filing a worker's compensation claim, and continued to get worse.  Tr. 665.  Specifically, plaintiff told Dr. Lowengart he "worked as a salesman for Pape Machinery, sold heavy equipment for 15 years. He was a heavy equipment mechanic for 10 years before that. He stopped working in September 2018 because of pain **and hasn't worked since then**. He lives with his wife and her handicapped daughter."  Tr. 670 (emphasis added).

The ALJ found that the limitations noted by Dr. Lowengart were largely based on plaintiff's subjective complaints and that Dr. Lowengart was not made aware that plaintiff actually continued to work and provided care for his disabled stepdaughter.  Tr. 31. The ALJ also noted

that plaintiff complained of debilitating headaches to Dr. Lowengart, but treatment records provided showed only sporadic headaches.   Tr. 31, 377,418,425,431,570,574 (reporting "occasional headaches").  In addition, the ALJ noted Dr. Lowengart's assessment was inconsistent with other treatment records and plaintiff's complaints to other providers.  Tr. 31.  The ALJ appropriately found Dr. Lowengart's opinion was not supported by or consistent with the medical record and plaintiff's activities.  The ALJ did not err in rejecting Dr. Lowengart's opinion.

<u>CONCLUSION</u>

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed. The Clerk is directed to enter a judgment accordingly.

DATED this 13th day of February, 2023.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge